IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VLADIMERE BOHEMOND, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | No. 3:23-CV-1973-K-BW |
| | § | |
| CITY OF DALLAS, | § | |
|     Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is a motion for summary judgment filed by Defendant City

of Dallas (the "City") pursuant to Federal Rule of Civil Procedure 56, seeking

summary judgment as a matter of law on all claims asserted by Plaintiff Vladimere

Bohemond.  (Dkt. No. 26 ("Mot.").)  The motion is accompanied by a supporting

brief (Dkt. No. 27 ("Br.")) and an appendix (Dkt. No. 28 ("App.").)  Bohemond filed

a response to the summary judgment motion on November 26, (Dkt. No. 30), and

the City filed its reply on December 12, (Dkt. No. 31).  Also before the Court is the

City's motion for judgment on the pleadings, pursuant to Federal Rule of Civil

Procedure 12(c).  (Dkt. No. 16.)

The case is before the undersigned United States magistrate judge for pretrial

management under 28 U.S.C. § 636(b) and Northern District of Texas Special Order

No. 3-354.  (Dkt. Nos. 2, 25.)  For the reasons stated below, the undersigned

recommends that the City's motion for summary judgment (Dkt. No. 26) be

**GRANTED**, and the City's motion for judgment on the pleadings (Dkt. No. 16) be **DENIED** as moot.

## I.  BACKGROUND

**A.    Procedural Background.**

On August 1, 2023, Bohemond filed his pro se Petition in the Justice Court in Dallas County, Texas, alleging that he was terminated by the City on June 25, 2023, in retaliation for his complaints of harassment, in violation of Title VII of the Civil Rights Act.  (*See* Dkt. No. 1-3 ("Compl.").)   The City filed an answer in state court on August 18, 2023 (Dkt. No. 1-4), and, on September 1, 2023, timely removed the lawsuit on the basis of federal question jurisdiction.  (Dkt. No. 1.)  On September 6, 2023, Bohemond filed a "Motion to Dismiss with Prejudice and Remand Back to State Small Claims Court" (Dkt. No. 7), which was denied on October 30, 2023 (Dkt. No. 15).

On October 13, 2023, U.S. Magistrate Judge David L. Horan entered the Initial Scheduling Order in this case.  (Dkt. No. 14.)  Among other things, the Initial Scheduling Order instructed Bohemond regarding his obligations as a pro se litigant, including his obligation to read and follow the Court's local rules and the Federal Rules of Civil Procedure, as well as to "timely comply with any order issued by this Court."  (Dkt. No. 14 ¶ 1.)  The Initial Scheduling Order also set forth the following deadlines: the deadline for amended pleadings was January 29, 2024 (*id*. at ¶ 3); the

deadline for completion of discovery was September 27, 2024 (*id.* at ¶ 5); and the deadline for filing dispositive motions was October 28, 2024 (*id.* at ¶ 7).

On April 17, 2024, the City filed a motion for judgment on the pleadings, after which Bohemond filed a response on April 18, 2024 (Dkt. No. 18), and a second response on May 15, 2024 (Dkt. No. 19); the City filed a reply on June 4, 2024 (Dkt. No. 20). Thereafter, Bohemond made two filings on June 10, 2024 that appear to be his responses to discovery requested by the City. (*See* Dkt. Nos. 21, 22.) The second filing (Dkt. No. 22) was docketed as a motion but subsequently terminated because the Court does not require litigants to file discovery materials. (*See* Dkt. No. 24.)

Then, on October 28, 2024, after the completion of discovery and within the deadline for dispositive motions, the City filed the present motion for summary judgment. (Dkt. No. 26.) Recognizing that Bohemond is a pro se litigant, the undersigned entered a Supplemental Scheduling Order on November 8, 2024 (Dkt. No. 29), directing Bohemond to file a written response to the City's motion for summary judgment by November 27, 2024, and explaining the requirements of a summary judgment responsive brief as set forth in Northern District of Texas Local Rule 56.5(b). Bohemond filed a response on November 26, 2024. (Dkt. No. 30 ("Resp.").)[1] Therefore, the Court may consider the motion for summary judgment

---

[1] Bohemond's Response makes numerous unsubstantiated factual assertions but includes no evidence to support his assertions other than what appear to be his responses to interrogatories propounded by the City. (*See* Resp. at 6-12.) As such, his Response does not comply with the requirements of N.D. Tex. L.R. 56.4-56.6, but in recognition of

ripe and ready for determination.  No amended pleadings having been filed.

Bohemond's original state court petition, filed August 1, 2023, remains the operative

complaint.  (*See* Compl.)

The City has submitted the following summary judgment evidence:

- Declaration of Denesha Factory and attached business records, App. 001-App. 021.

- Declaration of James Peacock and attached documents, App. 022-App. 052.

- Excerpts of Vladimere Bohemond's Oral Deposition, dated August 6, 2024, App. 053-App 076.

As noted above, the only evidence submitted by Bohemond appears to be his

interrogatory responses.  (*See* Resp. at 6-12.)  To the extent these interrogatory

responses are referenced in these Findings, Conclusions, and Recommendation, they

are cited using the page number of the Response on which they appear.

## B.    Factual Background.[2]

Bohemond began work in the City's Park and Recreation Department

("PKR") as a custodian on approximately May 15, 2023.  (App. 001, 016.)  During

the relevant period, Denesha Factory was Bohemond's direct supervisor, and John

---

Bohemond's status as a pro se litigant, the undersigned considers the Response and the evidence submitted in the light most favorable to Bohemond and draw justifiable inferences to the extent permitted.  *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015).

[2] The facts recounted are based on declarations and other evidence adduced by the City.  Despite being advised by the Court of the procedural rules of a summary judgment motion, including the right to submit opposing evidence (*see* Dkt. No. 29), Bohemond's Response does not dispute any of the facts adduced by the City.

Jenkins was the Director of PKR.   (App. 001.)  Bohemond was employed by the

City for just over two months.  (App. 001, 016, 020-21.)  The City terminated him on

July 25, 2023, after informing him that he failed his probationary period.  (App. 005,

020-21.)

Similar to other City departments, PKR uses a probation system for the first

six months of employment, during which time the employee's work performance is

evaluated to determine whether he is successfully performing the functions of his job.

(App. 001-02, 006-07.)  If the employee fails his probationary period, he is informed

of the failure and is terminated with no right to an internal appeal.  (App. 002, 006-

07.)

To successfully complete probation, Bohemond was required to demonstrate

his ability to consistently and successfully perform his job duties.  (App. 002, 006-07.)

During the initial probation, an employee receives a performance progress report

every month, but because Bohemond was absent from work on the scheduled date

for what would have been his first performance progress report discussion (June 15,

2023), he received his first and second performance progress report discussions on

July 20, 2024.  (App. 004.)  In the discussion, Ms. Factory reviewed two

performance progress reports with Bohemond: one for the period from May 15, 2023

to June 15, 2023, which Ms. Factory completed on June 15, 2023; and the other for

the period from June 16, 2023 to July 15, 2023, which Ms. Factory completed on

July 20, 2023.  (App. 004, 016-17.)  Bohemond refused to sign either performance

progress report because he believed the "information [was] incorrect."  (App. 004, 016-17.)

Based on the rating metrics on the performance progress reports,[3] Bohemond's performance began poorly and declined from there.  (App. 004-05, 016-17.)  On both performance progress reports, Bohemond received an "unacceptable" rating for attendance due to being absent or tardy for twelve days during his two-month tenure. (App. 004-05, 016-17.)  He received an "acceptable" rating for punctuality on the first performance progress report, but this rating was reduced to "developing" on the second performance progress report due to his inconsistency in reporting to work on time.  (App. 004-05, 016-17.)

Bohemond received an "unacceptable" rating on both performance progress reports regarding his ability to exhibit the City's core values.   (App. 004-05, 016-17.) Ms. Factory noted that she had concerns with Bohemond's engagement, as well as ethical concerns.  (*Id.*)  Bohemond received an "acceptable" rating for safety in his first month's performance progress report, but this rating on this aspect of his job was downgraded to "unacceptable" in the second month because Bohemond was wearing in-ear headphones playing music loud while working, which caused a communication barrier.  (App. 004-05, 016-17.)  Ms. Factory and PKR staff could

---

[3] The form allows for three ratings: "Acceptable" (Consistent with expectations; "Developing" (Inconsistent results with capacity for improvement); and "Unacceptable" (Does not meet expectations).  (App. 016, 017.)

only get his attention by raising their voices or moving into his line of sight.  (App. 005.)  Shortly after Factory instructed Bohemond not to wear his headphones while working, he switched from in-ear headphones to wearing over-the-ear headphones. (*Id*.)  Thereafter, Bohemond insisted on wearing in-ear and over-the-ear headphones that inhibited his ability to hear Factory and his coworkers.  (*Id*.)

The only consistent "acceptable" rating Bohemond received during the two months he worked for the City related to certifications and licenses (App. 004-05, 016-17), but Bohemond's position did not require him to obtain or maintain any licenses or certifications (App. 005, 018-19).

Because of Bohemond's "persistent performance and attendance issues, especially so early into his employment, [Factory] started the process to fail [Bohemond] on probation, following the department's standard procedures."  (App. 005.)  This process is not instantaneous and required multiple levels of review before probation is actually failed.  (*Id*.)  After Factory received approval from Human Resources ("HR"), she met with Bohemond to notify him that he failed probation, and his termination became effective July 25, 2023.  (*Id*.)  Factory states that at the time of Bohemond's termination, she was unaware of any complaints filed against her by Bohemond, and she had not been informed of any complaints against her prior to Bohemond's termination.  (*Id*.)

On or about July 25, 2023, Bohemond submitted an inquiry to the Dallas District Office of the Equal Employment Opportunity Commission ("EEOC").

(App. 043-47.)  The EEOC notified Bohemond that the approximate deadline for filing a charge was May 16, 2024.  (App. 044.)  Bohemond alleges that after he submitted his inquiry, he was unable to schedule an appointment with the EEOC, and he did not speak to anyone from the EEOC by telephone or correspond with anyone from the EEOC via email.  (App. 071-73.)  Although Bohemond claims to have emailed the EEOC, he produced no evidence to substantiate that averment despite those documents being requested by the City.  (*Id.*)  Thus, there is no evidence showing that Bohemond filed a charge with the EEOC or verified his initial inquiry.  (App. 043-47, 072.)  There is also no evidence that Bohemond filed a charge with the Texas Workforce Commission ("TWC"), and a records request submitted to TWC indicated they had no information regarding a charge filed by Bohemond. (App. 051-52; 073.)

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual "issue is material if its resolution could affect the outcome of the action."  *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003).  "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth"–and submit evidence of– "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140

F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party—but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter*, 810 F.3d at 942-43 (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" satisfy the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and

denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff, or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-CV-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

### III. ANALYSIS

Bohemond's complaint asserts that he "was terminated by Ms. Factory in retaliation to complaints [he] made to upper management about her harassment [and] bullying behavior," in violation of Title VII of the Civil Rights Act. (*See* Compl. at 2.) According to Bohemond, "Ms. Factory constantly yelled at [him and] micro manag[ed] [him]," and the "working conditions were intolerable." (*See id.*) Thus, on the face of the complaint, Bohemond appears to bring claims of harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, as well as a common law wrongful termination claim. The

City argues that it is entitled to summary judgment as a matter of law on all of Bohemond's claims.  (*See generally* Br.)

First, with respect to Bohemond's harassment claim, the City argues that Bohemond failed to exhaust his administrative remedies and cannot establish a prima facie case for harassment because he cannot establish the existence of a genuine issue of material fact showing that he was harassed based on a protected characteristic or that the alleged harassment affected a term or condition of his employment.  (*See* Br. at 1-2.)  Similarly, the City argues that Bohemond failed to exhaust his administrative remedies for his retaliation claim and cannot establish a prima facie case for retaliation because he cannot show a causal link between his alleged protected activity and his termination.  (*See id*. at 2.)  The City further argues that it had legitimate, non-retaliatory reasons for terminating Bohemond's employment, and Bohemond has shown no evidence to demonstrate that those reasons were pretextual.  (*See id*.)  Finally, the City argues that it is entitled to summary judgment on Bohemond's wrongful termination claim because Bohemond has not shown that there was an employment contract limiting the City's ability to terminate his employment at will.  (*Id*.)

Bohemond's Response reiterates many of the same generic allegations found in his complaint, but it fails to address the City's arguments for summary judgment and sets forth no legal arguments and authorities, as required by the Court's local rules.  *See* N.D. Tex. Loc. R. 56.5(a).  The Response also asserts new allegations that

were not presented in Bohemond's original complaint (*compare* Resp. *with* Compl.), including that Factory called him "deaf," stated that he needed hearing aids, and made "reference to his religion." (Resp. at 6, 11.) Bohemond cannot, however, amend his live pleading through a response to the City's motion. *See Med-Cert Home Care, LLC v. Becerra*, No. 3:18-CV-2372-E, 2023 WL 6202050, at *10 (N.D. Tex. Sept. 21, 2023) ("A claim which is not raised in the complaint but, rather, is raised only in opposition to a motion for summary judgment is not properly before the court."" (citing *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005)); *see also Pittman v. U.S. Bank NA*, 840 F. App'x 788, 789-90 (5th Cir. 2021) ("Our precedent precludes a plaintiff from advancing a new claim or reframing a previously presented one in response to a motion for summary judgment." (cleaned up)); *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) (district court did not abuse its discretion in declining to consider "new factual allegations and theories of liability not present in the pleadings"). Accordingly, any alleged claims of religious discrimination under Title VII or disability discrimination under the Americans with Disabilities Act ("ADA") are not before the Court.

Furthermore, as previously noted, Bohemond's Response lacks any substantive arguments or legal grounds in opposition to the City's motion. (*See* Resp.) He merely reiterates the same conclusory allegations found in his complaint and makes general statements about the pervasiveness of bullying and harassment in our society, but he fails to rebut the City's evidence or authorities on this, or any

-15-

other issue.  (*See* Resp. at 1-5.)  "A pro se party is in no way exempted from compliance with the relevant rules of procedure and substantive law."  *Kaswatuka v. U.S. Dep't of Homeland Sec.*, 7 F.4th 327, 331 (5th Cir. 2021); *see Jones v. Alfred*, 353 F. App'x 949, 951-52 (5th Cir. 2009) (stating that the "responsibility to construe pro se filings liberally does not mean that [courts] will invent, out of whole cloth, novel arguments on behalf of a pro se plaintiff in the absence of meaningful, albeit imperfect, briefing" (citations omitted)).  Bohemond's Response, therefore, is insufficient to save his claims from summary judgment on this basis.

## A.    Bohemond failed to exhaust his administrative remedies.

Before filing a complaint alleging a cause of action under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC or the TWC.  *See* 42 U.S.C. § 2000e-5(f)(1); *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997).  An EEOC charge must be filed within three hundred (300) days of the allegedly unlawful action.  *Drerup v. Consol. Nuclear Sec., L.L.C.*, No. 21-10600, 2022 WL 3335780, at *2 (5th Cir. Aug. 12, 2022) (unpublished).  In general, exhaustion occurs when a charge is filed and a right-to-sue letter is subsequently received.  *Josey v. Caris Life Scis., Inc.*, No. 3:23-CV-1297-B, 2024 WL 1122049, at *2 (N.D. Tex. Mar. 14, 2024).

This first administrative step is in place to put employers on notice of the "'existence and nature of the charge against them.'"  *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 55

(1984)).  If certain criteria are met, courts will allow documents other than a formal charge to serve as the charge for the purposes of exhaustion.  *See generally Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 405–07 (2008) (holding that a sufficiently detailed and verified intake questionnaire was sufficient as a charge under the Age Discrimination in Employment Act).  However, an unverified intake form is insufficient to constitute a charge under the EEOC requirements.  *See Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337–38 (5th Cir. 2021).

An employee alleging discrimination under Title VII must submit a charge to the EEOC.  *See* 29 C.F.R. § 1601.7(a).  That charge must "be in writing and signed and . . . verified."  *Id.* § 1601.9.  To satisfy the verification requirement, a charge must be "sworn to or affirmed before a notary public, designated representative of the EEOC, or other person duly authorized by law to administer oaths . . . or supported by an unsworn declaration in writing under penalty of perjury."  *Id.* § 1601.3(a).  Substantively, a charge must include the name and contact information of the person making the charge, the same information for the accused individuals, a factual statement of the allegations, the size of the employer, and disclosure of whether the allegations have already been brought to a state or local agency.  *See id.* § 1601.12(a).  In the event that administrative remedies are not exhausted, it is proper for a court to dismiss the associated claims.  *See Ernst*, 1 F.4th at 339 (upholding a dismissal when the administrative remedies were not exhausted).  Similarly, if a charge is not filed within the prescribed timeframe, the claims are time

barred.  *See Drerup*, 2022 WL 3335780, at *2 (upholding that a charge filed after the time limit was properly barred).

Here, Bohemond failed to exhaust his administrative remedies because he failed to file a charge or other documentation meeting the criteria set forth above. The City never received notice of a charge from Bohemond or a right-to-sue letter, and the EEOC denied having any documents evidencing that it received a charge from Bohemond.  (App. 048-50.)  Although the City requested that Bohemond produce all documents he "submitted to or received from" the EEOC (App. 032), Bohemond did not produce an EEOC charge and stated that he had produced all responsive documents (App. 035).  The only relevant document Bohemond produced was an unverified, unsigned inquiry, which stated that his deadline to file a charge was on or about May 16, 2024.  (App. 043-47.)

Bohemond testified in his deposition that he did not know what an EEOC charge was, and he "just went online and filled out the paperwork and that's it"; he never spoke with the EEOC by telephone; and he did not think he ever filed any additional paperwork with the EEOC.  (App. 072.)  Bohemond also testified that he "probably" filed a charge with the TWC, but he could not remember.  (App. 073.) Nor has Bohemond produced any documentation or correspondence with the TWC, and the TWC indicated that it did not have any information indicating it received a charge from Bohemond.  (App. 051-52.)  Accordingly, there is no evidence substantiating that Bohemond submitted anything to the EEOC beyond an

unverified inquiry form or that he submitted anything to the TWC at all.  (App. 048-50; 051-52; 072; 073.)  As noted above, an unverified inquiry form is not sufficient to constitute a charge.  *Ernst*, 1 F.4th at 338–39; *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017).

Because Bohemond failed to exhaust his administrative remedies on his Title VII claims of harassment and retaliation, the City is entitled to summary judgment on these claims.

**B.    Bohemond's harassment claim fails as a matter of law.**

Even if Bohemond had exhausted his administrative remedies, his harassment claim still fails.  Title VII of the Civil Rights Act makes it unlawful for an employer to discriminate against an individual based on race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e–2; *Thornton v. Dallas Indep. Sch. Dist.*, No. 13–CV–3012–P, 2014 WL 46398, at *3 (N.D. Tex. Jan. 6, 2014).  Claims under Title VII are analyzed through the framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).  Under that framework, a plaintiff must establish a prima facie case of discrimination before the case may proceed.  *See id*.

Bohemond's primary allegation appears to be that he was fired by Factory after he reported her harassment.   (*See* Compl.)  A prima facie case of harassment stemming from a supervisor's conduct under Title VII must contain the following elements: (1) the plaintiff is a member of a protected class; (2) he was subject to

-19-

unwelcome harassment; (3) the harassment was based on a protected characteristic; and (4) the harassment affected a term, condition, or privilege of employment.  *See Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157, 162–63 (5th Cir. 2007).  Here, Bohemond fails to plead three of the four elements required for a harassment claim.

### 1. Bohemond has failed to show harassment based on a protected characteristic.

Bohemond does not plead any facts to indicate that he is a member of a protected category based on his race, color, religion, sex, or national origin.[4]  (*See* Compl.)  This reason alone mandates summary judgment of his claim.  *See, e.g., Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) (citing 42 U.S.C. § 2000e–2(a)(1)).  Furthermore, Bohemond's Response does not point to a single allegation in his complaint related to protected categories to which he belongs or characteristics that he possesses.  (*See* Resp.)

Next, Bohemond fails to make a plausible claim that he was harassed based on a protected characteristic (*see* Compl.), as required to state a Title VII claim.  *See* 42 U.S.C. § 2000e, *et seq.*  Actionable harassment must be based on a protected category.  *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002).  Bohemond alleges that he was "harassed," yelled at, and micromanaged (*see* Compl. at 2), but "Title VII does not protect opposition to all forms of unscrupulous conduct," *Brown v. United*

---

[4] As noted above, Bohemond's belated and unsupported allegation that "Ms. Factory made remarks about his religion" (Resp. at 3), raised in opposition to the City's motion for summary judgment. is not properly before the Court.

*Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (citation omitted). Nor does it "set forth 'a general civility code for the American workplace.'" *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting, in turn, *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998))). "Instead, Title VII prohibits discrimination based on race, color, religion, sex, or national origin." *Turner v. Whataburger*, No. 3:22-CV-1971-G-BN, 2022 WL 6785817, at *7 (N.D. Tex. Sept. 16, 2022), *adopted*, 2022 WL 6778975 (N.D. Tex. Oct. 11, 2022) (internal quotation marks omitted).

Even in his Response, Bohemond does not argue that Factory harassed him based on a protected category; only that she called him deaf and stated that he needed a hearing aid and "made remarks" about his religion. (Resp. at 1, 6, 11.) Furthermore, as noted previously, the only evidence Bohemond proffers to support these new assertions are his interrogatory responses (*see* Resp. at 6-12), which are insufficient to raise an issue of material fact that any alleged harassment was based on a protected category. *See Ellis v. Principi*, 246 F. App'x 867, 871 (5th Cir. 2007) (holding that the plaintiff's allegations did not sufficiently state a hostile work environment claim because they failed to contain an implicit or explicit connection between the alleged activity and the plaintiff's membership in a protected class). Because Bohemond has failed to establish the third prima facie element of a

harassment claim, the City is entitled to summary judgment for this additional
reason.

### 2. Bohemond has failed to show that the alleged harassment affected a term or condition of his employment.

Bohemond also fails to adduce evidence supporting the fourth element—that
the alleged harassment affected a term or condition of his employment. *Lauderdale*,
512 F.3d at 162–63. The legal standard for workplace harassment is "high."
*Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). "For
harassment . . . to affect a term, condition, or privilege of employment[,] . . . it must
be 'sufficiently severe or pervasive to alter the conditions of the victim's employment
and create an abusive working environment.'" *Ramsey v. Henderson*, 286 F.3d 264,
268 (5th Cir. 2002) (internal quotations omitted) (quoting *Harris*, 510 U.S. at 21).

"In determining whether a workplace constitutes a hostile work environment,
courts must consider the following circumstances: 'the frequency of the
discriminatory conduct; its severity; whether it is physically threatening or
humiliating, or a mere offensive utterance; and whether it unreasonably interferes
with an employee's work performance.'" *Ramsey*, 286 F.3d at 268 (quoting *Walker v.
Thompson*, 214 F.3d 615, 625 (5th Cir. 2000)). Merely offensive conduct is not
actionable. *Harris*, 510 U.S. at 21. Furthermore, poor performance evaluations,
"write-ups," and work criticism, even if unjust and unfair and in front of peers,
generally do not rise to the level of a hostile work environment. *See Kang v. Bd. of*

*Supervisors of Louisiana State Univ.*, 75 F. App'x 974, 975–77 (5th Cir. 2003).

Likewise, "[m]ere utterance of an . . . epithet which engenders offensive feelings in

an employee does not sufficiently affect the conditions of employment to implicate

Title VII." *Harris*, 510 U.S. at 21.

Bohemond alleges that he was "constantly" yelled at and micromanaged by

Factory and states that the "working conditions were intolerable." (*See* Compl.)

Without more, however, these allegations are too conclusory to state a claim. *See*

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th

Cir. 1982) ("Although we must accept as true the well-pleaded allegations of a

complaint [. . . ], we do not accept as true conclusory allegations in the complaint.").

While being yelled at and micromanaged may be unpleasant, it is not the type of

discriminatory intimidation, ridicule, and insult sufficient to support a claim under

Title VII. *See Friend v. McAdams*, 861 F. App'x 825, 830-31 (5th Cir. 2021) (finding

allegations of screaming at the employee, refusing to meet with her, saying that she

would not be around much longer, and other incidents insufficient to state a claim

for hostile work environment under Title VII).

Bohemond's Response fails to rebut the City arguments demonstrating that

the conduct alleged by Bohemond is insufficient to support a claim for harassment.

(*See generally* Resp.) Additionally, even assuming the new allegations in Bohemond's

Response were true, they do not rise to the level of discriminatory intimidation,

ridicule, and insult sufficient to support a claim under Title VII. For example,

Bohemond stated that "Ms. Factory would make it her mission to humiliate [and] intimidate [him] and was constantly threatening [him] with reprimands . . . ." (*See* Resp. at 3.) But as noted previously, allegations of screaming at the employee, refusing to meet with her, saying that she would not be around much longer, and other incidents were insufficient to state a claim for hostile work environment under Title VII. *See Friend*, 861 F. App'x at 830-31. Bohemond also asserts that that Factory "physically hit [him] when [he] tried to intervene when she was snatching one of the summer kids," (Resp. at 6), but even if true, while such conduct may be unacceptable workplace conduct, there is no allegation that Factory's actions were motivated by unlawful animus based on a protected characteristic.

Based on the foregoing, Bohemond has failed to establish a prima facie of harassment because there is no evidence to show that any harassment affected a term, condition, or privilege of employment. Accordingly, the City is entitled to judgment as a matter of law on Bohemond's harassment claim under Title VII for this additional reason.

## C.    Bohemond's retaliation claim fails as a matter of law.

Bohemond's retaliation claim also fails on multiple grounds. First, for the reasons discussed above (*supra* Section III. A), the City is entitled to summary judgment because Bohemond failed to exhaust his administrative remedies prior to bringing suit for retaliation. *See Ernst*, 1 F.4th at 339 (holding that because no charge document was ever received by the defendant, plaintiff failed to exhaust

administrative remedies and the retaliation claim was properly dismissed). Additionally, even if Bohemond had properly exhausted his administrative remedies, his retaliation claim still fails for the reasons discussed below.

In the absence of direct evidence, Title VII retaliation claims are analyzed under the three-step *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas*, 411 U.S. at 802–04 (1973); *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705-06 (5th Cir. 2016). The plaintiff must first show a prima facie case of retaliation. *McDonnell Douglas*, 411 U.S. at 802. To establish a prima facie case of retaliation, a plaintiff must show that: "(1) he engaged in conduct protected by Title VII; (2) he suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action." *Cabral v. Brennan*, 853 F.3d 763, 766–67 (5th Cir. 2017) (quoting *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015)).

If the plaintiff establishes a prima facie case of retaliation, the burden of production then shifts to the employer to state a legitimate, non-retaliatory reason for the employment action at issue. *See Cabral*, 853 F.3d at 766–67 (quoting *Jenkins*, 784 F.3d at 269). If the employer meets its burden, the burden then shifts back to the plaintiff to offer evidence that the employer's stated reason was only pretext for retaliation. *See Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (citing *McDonnell Douglas*, 411 U.S. at 804). At this final stage, the plaintiff must present sufficient evidence to create a genuine and material fact issue that retaliatory

motive was the "but-for cause" of the adverse employment action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."); *see also Coleman v. Jason Pharms.*, 540 F. App'x 302, 304 (5th Cir. 2013) ("An employee establishes pretext by showing that the adverse action would not have occurred 'but for' the employer's retaliatory reason for the action."). "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Coleman*, 540 F. App'x at 304 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)); *Clemmer v. Irving Indep. Sch. Dist.*, No. 3:13-CV-4997-D, 2018 WL 1407288, at *2 (N.D. Tex. Mar. 21, 2018).

### 1. Bohemond did not engage in any protected activity.

"An individual engages in a protected activity [under Title VII, the Texas Commission on Human Rights Act, or the Age Discrimination in Employment Act of 1967] if [he]: (1) opposes an employment practice made unlawful [by those statutes], or (2) makes a charge, testifies, assists, or participates in a related investigation, proceeding, or hearing." *Boudreau v. Nokia of Am. Corp.*, No. 3:19-CV-01623-E, 2020 WL 7426155, at *7 (N.D. Tex. Dec. 18, 2020) (citing *Byers v. The Dallas Morning News, Inc.*, 209 F.3d 419, 427-28 (5th Cir. 2000)). An employee cannot simply allege a hostile work environment to satisfy the requirement that the employee engage in protected activity. *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x

485, 493 (5th Cir. 2011).  The complaint must specifically refer to the unlawful

harassment by characterization, not just that there was harassment.  *Harris-Childs v.*

*Medco Health Sols., Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006).

Bare, conclusory allegations do not satisfy pleading requirements, even when

specifically alleged and evidenced.  *Nedd v. Dallas Indep. Sch. Dist.*, No. 3:22-CV-

02322-K-BT, 2024 WL 945865, at *6 (N.D. Tex. Feb. 13, 2024) (holding that written

internal reports were insufficient to allege a prima facie case of retaliation when they

failed to mention age or race, and only mentioned internal COVID policies).

Grievances not based on protected activity cannot form the basis of a retaliation

claim.  *Gaspari v. FMC Techs., Inc.*, No. CV H-13-2353, 2016 WL 1055642, at *13

(S.D. Tex. Feb. 4, 2016), *adopted*, 2016 WL 1070859 (S.D. Tex. Mar. 15, 2016)

("Title VII protects only opposition to discrimination based on race, color, religion,

sex, or national origin. . . . Magic words are not required, but protected opposition

must at least alert an employer to the employee's reasonable belief that unlawful

discrimination is at issue.")

In this case, Bohemond presents no evidence of opposition to an employment

practice made unlawful by Title VII or any other employment statute.   In his

deposition, Bohemond testified that he made only two complaints regarding Factory

prior to his termination.  (App. 064.)  Bohemond testified that the first complaint

involved an in-person discussion at City Hall with "the lady that did orientation . . .

that did on-boarding," but he could not remember the date or the lady's name.

(App. 060-61). Bohemond did recall, however, that the conversation was about how Factory would "holler" and "scream" at him. (App. 061-62.) Bohemond testified that the second complaint he made was in an email sent to John King, a superintendent with PKR. (App. 059, 039-41.) In this email, Bohemond described being yelled at and harassed, but made no specific allegation as to the subject of the harassment. (App. 039-41.) Bohemond sent the email to King on July 21, 2023, the day after he received a poor performance review from Factory. (App. 039-41, 016-17.) Because these two complaints merely accused Factory of yelling at him unconnected to any unlawful discrimination, they do not constitute protected activity as a matter of law. *Harris-Childs*, 169 F. App'x at 916 (holding that plaintiff did not engage in protected activity when her internal complaint did not reference a protected category); *see also Gaspari*, 2016 WL 1055642, at *13 ("[P]rotected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue.")

### 2. Bohemond has failed to show a causal connection between any alleged protected activity and his termination.

Similarly, Bohemond presents no evidence showing that a causal connection exists between any protected activity and the adverse action. "Evidence for a causal connection includes: temporal proximity between a protected act and adverse employment action; an employment record that does not support the adverse action; and an employer's departure from typical policies and procedures." *Garvin v. Sw.*

*Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019).  In addition, to

demonstrate a causal connection, a plaintiff much show that the decision maker was

aware of the protected activity.  *McLaurin v. City of Jackson Fire Dep't*, 217 F. App'x.

287, 288 (5th Cir. 2006); *see Manning*, 332 F.3d at 883.

      In this case, Bohemond has adduced no evidence to suggest that the decision

maker was aware of his alleged protected activity.  Bohemond was terminated by his

supervisor, Factory (App. 001, 005, 020-21), but Factory affirms in her declaration

(which Bohemond does not dispute) that at the time of Bohemond's termination she

had no knowledge of any complaints filed against her by Bohemond, nor had she

been informed of any complaints against her prior to Bohemond's termination (App.

005).  With respect to Bohemond's other two complaints to "upper management," he

testified that in one instance he met with a woman at City Hall whose name he could

not remember, and he could not recall if anything ever came of the meeting (App.

063).  In the second instance, Bohemond sent an email to superintendent John King,

but Factory was not included on the email, and Bohemond does not know if she ever

saw the email.  (App. 069-70).  Thus, there is no evidence to indicate that Factory

knew that Bohemond had complained about her.

      Where a decision maker has no knowledge of the protected activity, there can

be no retaliation.  *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) ("A

'causal link' is established when the evidence demonstrates that 'the employer's

decision to terminate was based in part on knowledge of the employee's protected

activity.'" (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998));

*Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If

an employer is unaware of an employee's protected conduct at the time of the

adverse employment action, the employer plainly could not have retaliated against

the employee based on that conduct."); *Taylor v. Marshall Durbin Food Corp.*, 2002

WL 971645, at *3 (5th Cir. May 3, 2002) (unpublished) ("Because there is no

evidence to dispute the fact that [the decision maker] had no knowledge that

[plaintiff] had filed [a protected] charge, it would be quite a leap of logic for us to rule

that a reasonable juror could infer that [plaintiff's] termination resulted from

retaliatory animus.").

Regarding the other indicators of a causal connection, while there may appear

to be temporal proximity based on the fact that Bohemond's tenure with the City was

only two months long, that proximity alone is insufficient to establish a causal

connection without other evidence connecting temporal proximity to the decision

maker's knowledge of the protected activity. *Thompson v. Somervell Cnty.*, 431 F.

App'x 338, 342 (5th Cir. 2011) ("[E]ven at the prima facie stage, temporal proximity

can only establish a causal link when it is connected to the decision maker's

knowledge of the protected activity."); *see also Manning*, 332 F.3d at 883 ("Although

the plaintiff's burden at the prima facie stage is not onerous, the plaintiff must

produce at least some evidence that the decisionmakers had knowledge of his

protected activity.").

Also, as discussed further below, there is ample evidence that Bohemond's employment record prompted the adverse employment action. Bohemond received two poor performance reviews, both of which occurred prior to his only documented complaint about Factory (his July 21, 2023 email to King). (*See* App. 016-17, 039-42, 059.) Thus, the record evidence establishes that Bohemond displayed performance and attendance issues and was not sufficiently fulfilling his duties as a custodian. (App. 005, 016-17.)

Furthermore, Bohemond cannot show that the City departed from its typical policies and procedures. Rather, the evidence demonstrates that the City followed its usual processes in terminating Bohemond's employment. (App. 005.) As noted above, PKR employees have a six-month probation period similar to other City departments that requires performance progress reports for the purpose of evaluating an employee's ability to meet the expectations of their position. (App. 001, 004, 006-07, 016-17.) If an employee fails to meet the expectations of their position, they are "failed on probation" so long as the failure is approved by HR. (App. 005, 016-17.) The record reflects that the City followed these procedures. (App. 005.)

Because Bohemond cannot raise a genuine issue of material fact regarding causation, he cannot establish a prima facie case of retaliation, and the City is entitled to summary judgment on this claim.

### 3.  The City has provided legitimate reasons for terminating Bohemond.

Even assuming Bohemond had established a prima facie case of retaliation, the City had legitimate, non-retaliatory reasons for terminating Bohemond's employment, as discussed above.  The City's burden is one of production, not of proof.  *See Wooten v. Fed. Exp. Corp.*, No. 3:04-CV-1196-D, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007).

If an employee fails probation, PKR informs the employee of his failure and immediately terminates his employment.  (App. 005, 006-07.)  Failure of the probationary period is generally at the discretion of the department, but it must go through an approval process.  (App. 005.)   Here, Bohemond received performance progress reports.  (App. 004, 016-17.)   Because he was absent from work on June 15, 2023, he received both performance progress report discussions on July 20, 2024. (App. 004.)

On both performance progress reports, Bohemond's attendance was rated as "unacceptable" due to his absence or tardiness for twelve days of his two-month tenure.  (App.  016-17.)   Bohemond was absent ten or more times without excuse in less than two months, providing only one doctor's note excusing his absences (App. 002, 016-17), which is an unacceptable level of attendance per PKR protocols, whether on probation or not.  (App. 008-015.)  Factory noted that in one instance, "Bohemond explicitly refused to obtain a proper doctor's note to excuse his absences."  (App. 002.)  Bohemond was scheduled to work Monday through Friday

each week (App. 056), which means that out of the 48 working days in his tenure with the City, Bohemond was absent about 25 percent of the time.

Bohemond also received an "unacceptable" rating on both performance progress reports in terms of exhibiting the City's core values, because Factory had concerns with Bohemond's engagement, and she also had ethical concerns. (App. 004-05, 016-17.) In his first month's performance progress report, Bohemond received an "acceptable" rating on safety, but in the second month, his safety rating was downgraded to "unacceptable," because he was wearing headphones while working, which caused a communication barrier. (App. 004-05, 016-17.) The only rating of "acceptable" Bohemond consistently received across the two months was related to certifications and licenses (App. 005, 016-17), but Bohemond's position did not require him to obtain or maintain any licenses or certifications (App. 005, 018-19). Thus, in every applicable metric, Bohemond's performance was below standards—"especially so early into his employment"—as Factory noted. (App. 005.)

Because the City has satisfied its burden of production, Bohemond must show "a conflict in substantial evidence" as to whether the City would have taken these actions but for his protected activity. *Coleman*, 540 F. App'x at 304. To prove discrimination by comparison to other employees, the plaintiff must prove that he was treated less favorably than similarly situated employees outside of his protected class, under virtually identical circumstances. *See, e.g.*, *Lee v. Kansas City S. Ry. Co.*,

574 F.3d 253, 259 (5th Cir. 2009). To be "similarly situated," comparators must be "nearly identical." *Id.* at 260. Bohemond has failed to present evidence showing that he was treated worse than similarly situated co-workers. When he was asked in his deposition if he was aware of any probationary employees who engaged in the same conduct who were not failed on probation, he responded, "How – how – why would I hear about that?" and refused to further answer the question. (App. 064-65). As noted above, Bohemond also has not shown that the City departed from its usual procedures (App. 005, 006-07) or that its reasons for the termination were false or lacking in credibility (App. 016-17). Accordingly, the City has articulated legitimate, non-retaliatory reasons for Bohemond's termination, and Bohemond does not adduce any evidence to establish that those reasons were pretextual.

**D.    Bohemond's wrongful termination claim fails as a matter of law.**

To establish his cause of action for wrongful termination, Bohemond must first show that there was a contract that specifically limited the City's right to terminate his at-will employment. Such a contract is necessary to make a common law wrongful termination claim, as Texas is by default an at-will state. *Thomas v. Aetna Life Ins. Co.*, No. 3:99-CV-1163-M, 2000 WL 1239129, at *3 (N.D. Tex. Aug. 31, 2000) (citing *Fed. Exp. Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993)); *see also Webber v. M.W. Kellogg Co.*, 720 S.W.2d 124, 127 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.). Here, nothing in the complaint or the Responses contains any facts indicating that Bohemond had a binding employment contract

with the City, which is necessary for his wrongful termination claim to survive.  Nor
does Bohemond allege any facts that would support a "wrongful termination" claim
independent of Title VII, alleging only the words "wrongful termination."  (*See*
Compl.)

Further, common-law wrongful termination is not recognized as a claim that
can be made by an at-will employee.  *Schwager v. Telecheck Servs., Inc.*, No. 14-01-
00099-CV, 2002 WL 31995012, at *6 (Tex. App.—Houston [14th Dist.] Dec. 19,
2002, no pet.) (unpublished) ("[W]e agree with appellees that [appellant] has not
shown that a common law claim for wrongful termination of an at-will employee
exists except under *Sabine Pilot*.") (citing *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d
733, 735 (Tex. 1985) (holding that a narrow exception exists for an at-will employee
to file a common law wrongful termination when the employee is terminated for
refusing to perform an illegal act)).  The *Sabine Pilot* exception is inapplicable here, as
Bohemond does not allege that he was terminated for refusing to perform an illegal
act, but rather in retaliation for reporting his supervisor.  (App. 058.)

With no evidence of an employment contract in the record and Bohemond's
status as an at-will employee, Bohemond's wrongful termination claim fails to
survive summary judgment, and the City's motion should be granted as to this claim.

## IV.  RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the City's motion for summary judgment (Dkt. No. 26) pursuant to Federal Rule of Civil Procedure 56 be **GRANTED**, and Bohemond's claims be **DISMISSED WITH PREJUDICE**.

It is further **RECOMMENDED** that the City's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. No. 16) be **DENIED** as moot.

**SO RECOMMENDED** on January 10, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).